ONE HUNDRED AND TWENTY-NINE PACKAGES (UNITED STATES v.). See Case No. 15,941.

ONE HUNDRED AND TWENTY-SIX BALES OF PADDING (UNITED STATES v.). See Case No. 15,942.

ONE HUNDRED AND TWENTY-THREE CASKS OF DISTILLED SPIRITS (UNITED STATES v.). See Case No. 15,-943.

———

## Case No. 10,525.

ONE HUNDRED AND TWENTY-THREE PACKAGES OF GLASS.

[5 Hunt, Mer. Mag. 450.]

Circuit Court, S. D. New York. April Term, 1841.

CUSTOMS DUTIES — EVIDENCE AS TO VALUE OF IMPORTED GOODS—OPINION OF APPRAISERS—AFFIDAVIT OF VALUE — QUESTION FOR JURY — ACT MAY 28, 1830.

[1. Upon the trial of an information under Act Cong. May 28, 1830 [4 Stat. 409], seeking the forfeiture of imported goods on the ground that the actual value thereof was falsely stated in the invoice, evidence, on behalf of the importer, of the selling price of the goods at the port of importation, and of what would be the market price at the place of manufacture, in order to yield a profit, is proper and relevant.]

[2. Although, under the revenue laws as existing in 1841 [5 Stat. 463], the opinion of the appraisers as to the foreign cost or market value of imported goods is prima facie evidence of the fact, it is not conclusive upon a question of forfeiture, and its weight, as compared with other evidence, is a question for the jury.]

[3. Where, upon the trial of such an information, the affidavit as to value, annexed to the invoice, pursuant to statute, is introduced in evidence, it is error to instruct the jury that such affidavit is of no weight, and is not to be looked to at all by them; such affidavit being a voucher required by law, and intended as some evidence of the verity of the invoice, the weight of which it is for the jury to determine.]

[Error to the district court of the United States for the Southern district of New York.]

[In admiralty. This was an information under section 4 of the act of congress of May 28, 1830, claiming forfeiture of 123 packages of glass. Barclay & Livingston interposed a claim to the goods. The district court rendered a decree for the government. Claimant brings error. Reversed.]

THOMPSON, Circuit Justice. This case comes up on a writ of error from the district court for the Southern district of New York. An information was there filed under the fourth section of the act of congress of the 28th of May, 1830 [4 Stat. 409] (8 J. W. S. 340), claiming a forfeiture of the goods in question upon an allegation that the invoice was made up with intent, by a false valuation, to defraud the revenue of the United States; alleging that the goods were charged in the invoice at a less price than they actually cost the importer. The information also contains an allegation that, the goods having been procured otherwise than by purchase, the same were charged in the invoice at a price less than their actual value at the time and place when and where procured.

The claims interposed by the claimants allege that the goods were bona fide the property of Booth & Co. of Sunderland, in England, manufacturers, and were sent out and consigned to the claimants for sale. That an entry was duly made, and invoice produced and left with the collector, and denying that such invoice and entry were made with intent to defraud the revenue. From these allegations in the pleadings, it appears that the entry was made by the claimants as consignees of Booth & Co., who were the manufacturers and owners of the goods; so that the inquiry upon the trial could not involve the actual cost of the goods, they not having been purchased; but must have turned upon the actual value of the articles. The case comes upon a bill of exceptions taken at the trial.

The district attorney gave in evidence the entry made by the claimants as consignees of Booth & Co. upon the oath of Schuyler Livingston, and the production of the invoice and bill of lading. The district attorney also read in evidence an affidavit annexed to the invoice, made by one John French, one of the firm of Booth & Co., as evidence that they were the manufacturers of the glass in question, which affidavit stated that they were the true and lawful owners of the goods, and that he and his partners were the manufacturers, and that the net prices charged in the invoice were the current value of the same at Sunderland. The district attorney then introduced Abraham B. Mead, one of the appraisers, and other witnesses, who appraised the goods at the time and place of importation at a higher value than that stated in the invoice.

On the part of the claimants, testimony taken under a commission was introduced to show that the fair market value of the goods at the time and place of importation was according to the prices stated in the invoice. Among other witnesses, James Riche swore that he knew the shipment in question and the invoice thereof (a copy of which was annexed to his deposition), and which exhibits the fair market value of the articles at Sunderland, at the date of the invoice. That his knowledge was gained by occasionally selling goods in Booth & Co.'s warehouse, and by having access to their books at all times. James Wilson was then called as a witness on the part of the claimants, who swore that for two years and a half last past he had been conversant with the importation and sales of glassware from the Tyne river and its vicinity. And the claimants then offered to prove by this witness the selling price of glass of this kind in New York, and what would be market price at Sunderland, in order to yield a profit here. This inquiry was objected to, and excluded by the court, and the admissibility of such inquiry is one of the questions that has been made in the case, and the only one relating to the admissibility of evidence. The affidavit annexed to the invoice was introduced on the part of the United States, and the force and effect of it, and the light in which it was considered by the court, in the charge to the jury, will depend on other considerations than the admissibility of the evidence.

I do not see on what grounds this inquiry, offered to be made of Wilson, was improper or irrelevant. Had the goods in question been purchased in England, the actual cost might have been proved, and would perhaps have been the evidence required. But the issue was as to the real or market value of the article at the date of the invoice. And this was a point not susceptible of absolute certainty in proof, but was to be made only by circumstances, and depending in some measure upon the opinion of witnesses. The selling price in New York was certainly not entirely irrelevant. It contributed in some measure to aid an opinion upon the actual or market value of the article at the place of exportation. It is not to be presumed that an importation would be made at a valuation upon which a loss must be sustained, according to the selling price, in the market here. It was evidence of the same character as that given on the part of the United States by the appraisers. That testimony could be no more than mere matter of opinion, derived from their acquaintance with the article, and their knowledge of the market price here and in England. And it was precisely the inquiry that had been made of Thomas D. Moore, a witness on the part of the United States. And although made on a cross-examination, it

was made without objection, nor do I perceive any objection that could have been made. The opinion of the appraisers as to the foreign cost or market value of the goods, is undoubtedly, under the revenue laws, prima facie evidence of the fact, and unappealed from may be conclusive evidence as to the amount of duties, but certainly cannot be conclusive upon the question of forfeiture. It must undoubtedly be rebutted by clear and satisfactory evidence. The weight to which it is entitled, when compared with the evidence on the other side, is to be weighed by the jury, who are to decide whether the inventory was made up with intent to defraud the revenue. I think, therefore, that the inquiry offered to be made of Wilson was improperly excluded.

The other question in the case relates to the affidavit annexed to the invoice. This was introduced on the part of the United States, and the inquiry respecting it grows out of the charge of the court. The judge instructed the jury: "That the affidavit accompanying the invoice was not to be looked to by them at all as evidence in the case. That it was not taken as evidence, was given without the presence of the adverse party, or any notice to him, was a voluntary affidavit of the party in his own behalf, and was merely a custom house document, required to accomplish the entry. That it was not a judicial oath on which the party could be indicted, and was no higher evidence than the invoice itself, or a letter of the party, and that the claimants were not entitled to any presumption in their favor as to its verity, or to the benefit of any doubt, so far as this allegation of the claimant is concerned." I cannot view the affidavit annexed to the invoice in this light. It was evidence introduced on the part of the United States, and was of course before the jury for some purpose. And if it was properly before the jury, it was their province to decide upon the weight of it. And they could not be instructed by the court not to look to it at all. It was not, to be sure, taken as evidence in a cause pending in court, and which would require notice to the other party, but it was a voucher required by law to accompany the invoice, and could not be considered merely as the voluntary oath of the party; but as evidence of the verity of the invoice, not conclusive, but still adding some sanction to the invoice. It can hardly be supposed that the government would require an affidavit to be annexed to an invoice, and at the same time considered it of no force or effect whatever. It was the voucher required by law, and upon which the goods would be admitted to an entry, unless objected to by the collector, upon the ground of a false and fraudulent valuation. It can form no objection that the party

could not be indicted for perjury. This arises from want of jurisdiction of the case in our courts. Had the affidavit been taken here, and is false, the party might have been indicted for perjury. If the affidavit was no higher evidence than the invoice itself, it is not easy to understand why the act of congress should have required it to be superadded to the invoice; it must certainly have been intended to give it some additional sanction. Admitting the seventy-first section of the act of 1799, 3 Laws [Bior. & D.] 200 [1 Stat. 678], to be in force and applicable to the case, it does not call for the view taken of the affidavit in the court below. The act only declares that if upon the seizure, the property shall be claimed by any person, the onus probandi shall lie upon such claimant but that such onus probandi shall lie on the claimant only where a probable cause is shown for such prosecution. The evidence of the appraisers was undoubtedly sufficient to make out the probable cause, and to throw upon the claimants the onus of proving the valuation of the article as stated in the invoice, and that must be shown by testimony satisfactory to the jury, but it determines nothing with respect to the kind of evidence necessary to establish the fact. Had the goods in question been purchased, it would have been in the power of the claimants to show the actual cost. And if that had not been done, it would have afforded a strong inference against them; such evidence being in their possession or within their power; but not presumed to be in the possession or within the power of the United States. But that principle does not apply to the present case. The inquiry here was as to the real or fair market value of the article, and this did not depend upon any private knowledge in the possession of the claimants; but upon matters of public information equally open to the United States as to the claimants. The cases referred to upon the argument, where a construction had been given to the onus probandi, required on the part of the claimants under the seventy-first section, do not apply to the case now before the court. The inquiry in those cases was as to the actual cost of the goods. This was a fact susceptible of positive proof within the power of the claimant; and its non-production, or not accounting for its absence, was a kind of negative evidence which ought to have great weight in the case. I cannot, upon the whole, concur with the district court in the view taken of the affidavit annexed to the invoice. It was an authentication of the invoice required by law, and was in evidence before the jury, and the weight to be attached to it was for them to decide. The judgment of the district court must therefore be reversed.